75 Cal.Rptr.2d 294 (1998)
64 Cal.App.4th 502
Ben Zion BIRMAN et al., Plaintiffs and Appellants,
v.
Stanley I. LOEB et al., Defendants and Respondents.
No. B111945.
Court of Appeal, Second District, Division Five.
June 3, 1998.
Review Denied August 26, 1998.
*296 Matthew H. Tambor, Beverly Hills, for Plaintiffs and Appellants.
Emil W. Herich, Los Angeles, and Cheryl D. Chadwick, for Defendants and Respondents.
Certified for Partial Publication[*]
TURNER, Presiding Justice.

I. INTRODUCTION
This case presents the question whether a creditor can set off a debt owed to the debtor against a deficiency remaining after nonjudicial foreclosure under a purchase money trust deed. Plaintiffs, Ben Zion Birman, Israel Birman, and Switch Construction Co., Inc., appeal from an order granting an equitable set-off to defendants, Stanley I. Loeb and Jerri Loeb. The Loebs had been sued individually and as trustees of the Stanley I. Loeb and Jerri Loeb Revocable Trust. Plaintiffs had purchased real property from defendants who took back a promissory note secured by a trust deed. Plaintiffs brought an action against defendants for fraud or negligent misrepresentation and failure to disclose in connection with the purchase and sale of the property. Plaintiffs prevailed, and a judgment including an attorney's fees and costs award was entered in their favor. Defendants subsequently reacquired the real property from plaintiffs at a nonjudicial foreclosure sale by way of a $2 million credit bid. The unsecured debt remaining after foreclosure was for more than $2 million. The trial court granted defendants an equitable set-off against the unsecured deficiency in the amount of the attorney's fees and costs award in plaintiffs' favor. We conclude that granting the equitable set-off contravened the economic policy considerations underlying antideficiency legislation, specifically Code of Civil Procedure section 580b. That statute precludes a deficiency judgment following foreclosure, judicial or nonjudicial, under a purchase money trust deed given to the seller. Accordingly, we reverse the order. Further, on appeal plaintiffs and their attorney have engaged in unreasonable violations of court rules and we therefore impose monetary sanctions against them and their counsel.

II. BACKGROUND
Plaintiffs purchased a warehouse from defendants in 1990. In connection with the sale, plaintiffs executed a promissory note secured by a deed of trust in favor of defendants. *297 The promissory note was for $4,450 million.
Plaintiffs sued defendants in 1992, alleging fraudulent or negligent misrepresentation and failure to disclose in connection with the purchase and sale of the real property. The court, in a nonjury trial, found in plaintiffs' favor. Judgment was entered in 1995. The court: reduced the principal amount of the promissory note by $1 million (from $4 million to $3 million); ordered the accrued interest in the amount of $665,000 added to the principal, bringing the balance to $3,665 million; and awarded plaintiffs their attorney's fees and costs in the sum of $306,820.57. This court affirmed that judgment on appeal. (Birman v. Loeb, B093378, Aug. 19, 1997 [nonpub. opn.].)
Plaintiffs never made a single payment under the reformed note and failed to pay outstanding real property taxes. Defendants commenced nonjudicial foreclosure proceedings. Those efforts were delayed when plaintiffs transferred the property to another entity which then sought the protection of bankruptcy courts. Defendants obtained relief from the bankruptcy stay and recommenced the foreclosure process. In February 1996, defendants foreclosed under the power of sale in the trust deed. They reacquired the property by way of a $2 million credit bid. According to defendants, the $2 million credit bid reflected at least, if not more than, the fair market value of the property at the time of the foreclosure. Seven months earlier, plaintiffs had represented the fair market value of the property to be $1.5 million. Following foreclosure, the unsecured balance remaining on the promissory note was $2,162,242.96.
Defendants filed a motion for "an equitable set-off and satisfaction in full of the judgment entered by this Court on March 3, 1995, in favor of Plaintiffs and against the Loebs for attorney's fees and costs in the amount of $306,820.57." They argued the attorney's fees and costs award in favor of plaintiffs should be set off against the unsecured balance remaining due to defendants on the promissory note. Plaintiffs opposed the motion on the grounds defendants were improperly seeking a deficiency judgment subsequent to a nonjudicial foreclosure under a purchase money trust deed. The trial court granted defendants' motion. This appeal followed.

III. DISCUSSION

A. Contentions on Appeal and Standard of Review
Plaintiffs contend: the equitable set-off was an "action" within the meaning of the one-action rule, Code of Civil Procedure, section 726;[1] defendants elected their "one action" to be nonjudicial foreclosure and a second action for equitable set-off was barred under section 726; and the antideficiency statutes, sections 580b and 580d, barred defendants from obtaining a deficiency judgment in the form of an equitable set-off. Defendants assert: plaintiffs' debt was not extinguished by the nonjudicial foreclosure sale; section 726 did not bar the equitable setoff because the nonjudicial foreclosure was not an "action" within the meaning of that section; neither the nonjudicial sale nor the subsequent equitable setoff violated the "one action" rule; and neither the language of sections 580b and 580d, barring deficiency judgments, nor the policies they were intended to serve, have any application here. The application of sections 726 and 580b to undisputed facts presents a question of law for our independent review. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799, 35 Cal.Rptr.2d 418, 883 P.2d 960; Hodges v. Mark (1996) 49 Cal.App.4th 651, 655, 56 Cal.Rptr.2d 700.)

B. There was no Violation of the One Action Rule of Section 726
Plaintiffs contend defendants violated the one action rule of section 726 by nonjudicially foreclosing on the trust deed and then seeking an equitable set-off. Plaintiffs argue defendants chose nonjudicial foreclosure as their one action. Plaintiffs further argue defendants violated section 726 by their "second action," for equitable set-off. We conclude defendants brought only one "action" against plaintiffs within the meaning of section *298 726. Hence, defendants did not violate the one action rule.[2]
Section 726, subdivision (a) provides in pertinent part: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter." Although the statute refers only to mortgages, it applies equally to trust deeds. (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 997, fn. 4, 275 Cal.Rptr. 201, 800 P.2d 557; Walker v. Community Bank, supra, 10 Cal.3d at pp. 732-733, fn. 1, 111 Cal.Rptr. 897, 518 P.2d 329; Bank of Italy Etc. Assn. v. Bentley (1933) 217 Cal. 644, 653, 20 P.2d 940.) Section 726 was enacted in response to concerns that mortgagors would be harassed by repeated litigation. (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 1002, 275 Cal.Rptr. 201, 800 P.2d 557; Salter v. Ulrich (1943) 22 Cal.2d 263, 266, 138 P.2d 7; Felton v. West (1894) 102 Cal. 266, 269, 36 P. 676; Ould v. Stoddard (1880) 54 Cal. 613, 615; Passanisi v. Meritr-McBride Realtors, Inc. (1987) 190 Cal. App.3d 1496,1506, 236 Cal.Rptr. 59.) As the Supreme Court explained in Felton v. West, supra, 102 Cal. at page 269, 36 P. 676: "Formerly the law allowed an action upon a promissory note, and also a suit in equity to foreclose the mortgage.... The mischief in such a practice lay in the multiplicity of suits, and the harassing of the debtor by two actions...." Section 726 was intended "to protect the debtor from having to defend against a multiplicity of actions." (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 1002, 275 Cal.Rptr. 201, 800 P.2d 557; Shin v. Superior Court (1994) 26 Cal. App.4th 542, 547, 31 Cal.Rptr.2d 587.) The meaning of "action" as used in section 726 is defined by section 22. (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 998, 275 Cal.Rptr. 201, 800 P.2d 557; Shin v. Superior Court, supra, 26 Cal.App.4th at pp. 545-546, 31 Cal.Rptr.2d 587.) Section 22 provides: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."
A nonjudicial foreclosure is not an "action" within the meaning of sections 22 and 726; hence, a nonjudicial foreclosure does not violate section 726. (Walker v. Community Bank, supra, 10 Cal.3d at p. 736, 111 Cal.Rptr. 897, 518 P.2d 329; Hatch v. Security-First Nat Bank (1942) 19 Cal.2d 254, 258, 120 P.2d 869 [absent a judicial foreclosure, section 726 has no direct application]; Passanisi v. Meritr-McBride Realtors, Inc., supra, 190 Cal.App.3d at pp. 1506-1507, 236 Cal.Rptr. 59; Mortgage Guarantee Co. v. Sampsell (1942) 51 Cal.App.2d 180, 186, 124 P.2d 353; cf. Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 998, 275 Cal.Rptr. 201, 800 P.2d 557 [extrajudicial set-off not an action]; see 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 115, p. 617, & 1997 pocket pt. § 115, p. 345; 4 Miller & Starr (2d ed. 1989) Deeds of Trust and Mortgages, § 9:105, p. 348, § 9:113, p. 374; 5 Matthew Bender, Cal. Real Estate Law & Practice (1997) Remedies in Secured Transactions, § 122.23[8], p. 122-22; 27 Cal.Jur.3d, Deeds of Trust, § 203, pp. 226-228.) Typically, no court has anything to do with a nonjudicial foreclosure. (Cf. Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 998, 275 Cal.Rptr. 201, 800 P.2d 557 [no court had anything to do with bank set-off].) Thus, for example, a nonjudicial sale of security for a parcel of realty is not an action within the meaning of section 726 and does not preclude a subsequent lawsuit in the form of a judicial foreclosure of personal property securing the same debt. (Walker v. Community Bank, supra, 10 Cal.3d at p. 736, 111 Cal.Rptr. 897, 518 P.2d 329; see Bank of California v. Leone (1974) 37 Cal.App.3d 444, 448,112 Cal.Rptr. 394.)
*299 An extrajudicial set-off, as, for example, by a bank against its depositor's funds, is also not an action within the meaning of sections 22 and 726. (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 998, 275 Cal.Rptr. 201, 800 P.2d 557; see Shin v. Superior Court, supra, 26 Cal. App.4th at p. 547-548, 31 Cal.Rptr.2d 587.) Normally no court is involved in a bank's setoff. (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 998, 275 Cal. Rptr. 201,800 P.2d 557.) However, when, as here, a set-off is asserted in a judicial proceeding, it is an action within the meaning of section 726. (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at p. 999, fn. 7, 275 Cal.Rptr. 201, 800 P.2d 557; Aplanalp v. Forte (1990) 225 Cal.App.3d 609, 615, 275 Cal.Rptr. 144.) In the present case, plaintiffs did not violate the one action rule of section 726. The nonjudicial foreclosure was not an action within the meaning of section 726. The only action defendants brought against plaintiffs was for an equitable set-off. Allowing defendants an equitable set-off did not violate one of the purposes of the one action ruleto prevent a multiplicity of actions against the debtor. (Security Pacific National Bank v. Wozab, supra, 51 Cal.3d at pp. 1002, 1005, 275 Cal.Rptr. 201, 800 P.2d 557; Walker v. Community Bank, supra, 10 Cal.3d at p. 736, 111 Cal.Rptr. 897, 518 P.2d 329.)

C. Although the Equitable Set-Off was not a Deficiency Judgment Per Se, Allowing the Set-off Would Contravene the Economic Policy Considerations Underlying Section 580b
This case presents the question whether the equitable set-off constituted a deficiency judgment within the wording of the antideficiency statutes or contravened the economic policy considerations underlying that legislation. In evaluating whether section 580b was to be applied to a particular set of financial circumstances resulting from events occurring after a foreclosure, California courts have examined in a practical manner the economic policy considerations underlying the anti-deficiency judgment statutes. (Ghirardo v. Antonioli (1996) 14 Cal.4th 39, 50, 52-53, 57 Cal.Rptr.2d 687, 924 P.2d 996; Cornelison v. Kornbluth (1975) 15 Cal.3d 590, 603,125 Cal.Rptr. 557, 542 P.2d 981; Bank of America v. Graves (1996) 51 Cal.App.4th 607, 611, 59 Cal.Rptr.2d 288; First Nationwide Savings v. Perry (1992) 11 Cal.App.4th 1657, 1664-1665, 15 Cal.Rptr.2d 173; Commonwealth Mortgage Assurance Co. v. Superior Court (1989) 211 Cal.App.3d 508, 515, 259 Cal.Rptr. 425; Passanisi v. Merit-McBride Realtors Inc., supra, 190 Cal.App.3d at p. 1508, 236 Cal.Rptr. 59.) We conclude the equitable setoff was not a deficiency judgment per se however, to allow it would contravene the economic policy considerations underlying section 580b.

1. The equitable set-off was not, strictly speaking, a deficiency judgment within the statutory language
Section 580b precludes a "deficiency judgment" after foreclosure, judicial or nonjudicial, under a purchase money trust deed given to the seller. (Ghirardo v. Antonioli supra, 14 Cal.4th at p. 49, 57 Cal.Rptr.2d 687, 924 P.2d 996.) Section 580b provides in relevant part: "No deficiency judgment shall lie in any event after a sale of real property... under a deed of trust or mortgage given to the vender to secure payment of the balance of the purchase price of that real property...." In the present case, defendants foreclosed under a purchase money trust deed. Therefore, they could not recover a deficiency judgment. (§ 580b; Ghirardo v. Antonioli, supra, 14 Cal.4th at p. 49, 57 Cal.Rptr.2d 687, 924 P.2d 996.)
We first consider whether the equitable set-off constituted a "deficiency judgment" within the language of the statutes. A deficiency judgment is described in section 580a as "a money judgment ... for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property ... was given as security...." It is similarly described in section 726, subdivision (b) as "a money judgment against the [debtor] for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the real property or estate for years therein sold as of the date of sale." The Supreme Court has *300 held: "A deficiency judgment is a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness. (§ 726.)" (Cornelison v. Kornbluth, supra, 15 Cal.3d at p. 603, 125 Cal.Rptr. 557, 542 P.2d 981.) The Supreme Court has further held: "The action thus characterized has long been described in this state as an action to obtain a deficiency judgment. Such an action is required where the creditor seeks a personal judgment for the unpaid balance due upon an obligation after unsuccessful resort to the security. [Citations.]" (Hatch v. Security-First Nat. Bank, supra, 19 Cal.2d at p. 261, 120 P.2d 869.)
We conclude the equitable set-off at issue here did not, strictly speaking, constitute a deficiency judgment within the statutory language. No personal money judgment was imposed against plaintiffs. Further, the set-off was not measured by the difference between the fair market value of the property held as security and the outstanding indebtedness. It was measured by the amount of attorney's fees and costs incurred by plaintiffs in pursuit of their tort action against defendants. (Cf. Ghirardo v. Antonioli supra, 14 Cal.4th at p. 50, 57 Cal.Rptr.2d 687, 924 P.2d 996 [sums omitted from payoff demand did not, strictly speaking, constitute a deficiency, i.e., difference between value of note and value of real property in a judicial foreclosure]; Cornelison v. Kornbluth, supra, 15 Cal.3d at pp. 602-603, 125 Cal.Rptr. 557, 542 P.2d 981 [damages for "bad faith" waste would not amount to a. deficiency judgment].) We turn to the question whether allowing the equitable set-off would violate the economic policy considerations underlying section 580b.

2. The Policy Behind Section 580b Would be Violated by Allowing the Equitable Set-Off
The equitable setoff, although not a deficiency judgment per se, cannot be allowed if it violates the policy considerations underlying section 580b and is therefore the functional equivalent of a deficiency judgment. (Ghirardo v. Antonioli supra, 14 Cal.4th at pp. 50, 52-53, 57 Cal.Rptr.2d 687, 924 P.2d 996; Cornelison v. Kornbluth, supra, 15 Cal.3d at p. 603, 125 Cal.Rptr; 557, 542 P.2d 981; First Nationwide Savings v. Perry, supra, 11 Cal.App.4th at pp. 1664-1665, 15 Cal.Rptr.2d 173; Commonwealth Mortgage Assurance Co. v. Superior Court, supra, 211 Cal.App.3d at p. 515, 259 Cal. Rptr. 425; Passanisi v. Merit-McBride Realtors Inc., supra, 190 Cal.App.3d at p. 1508, 236 Cal.Rptr. 59.) We conclude that allowing the equitable set-off under the circumstances of this case would contravene the economic policy considerations underlying section 580b.
In California, a creditor's right to enforce a debt secured by a trust deed on real property is restricted by statute. The Court of Appeal has held: "`Under California law, "the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a, 725a, 726.) If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726...." [Citation.]' [Citation.]" (Commonwealth Mortgage Assurance Co. v. Superior Court, supra, 211 Cal.App.3d at p. 514, 259 Cal.Rptr. 425; see Roseleaf Corp. v. Chierighino (1963) 59 Cal.2d 35, 38-39, 27 Cal.Rptr. 873, 378 P.2d 97.) As noted above, section 580b, enacted in 1933, precludes a deficiency judgment after foreclosure, judicial or nonjudicial, under a purchase money deed of trust given to the seller. The Supreme Court has described the purpose of section 580b as follows: "`Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in *301 land sales.' [Citations.]" (Cornelison v. Kornbluth, supra, 15 Cal.3d at pp. 601-602, 125 Cal.Rptr. 557, 542 P.2d 981; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97.) As similarly explained in Bargioni v. Hill (1963) 59 Cal.2d 121, 123, 28 Cal.Rptr. 321, 378 P.2d 593, "[Section 580b] compels a purchase money mortgagee to assume the risk that the security is inadequate. The purposes are to discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability. [Citation.] These purposes are served by relieving the purchaser of personal liability to any person who finances the purchase and takes as security a trust deed or mortgage on the property purchased, provided the financier intended the loan to be used to pay all or part of the purchase price. [Citations.]" Stated differently, section 580b places the risk of inadequate security, whether due to overvaluation or market decline, on the lender. (American Sav. & Loan Assn. v. Leeds (1968) 68 Cal.2d 611, 615, 68 Cal.Rptr. 453, 440 P.2d 933; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97.) Section 580b "is necessarily intended to provide a protection for the trustor...." (Brown v. Jensen (1953) 41 Cal.2d 193, 197, 259 P.2d 425; Schumacher v. Gaines (1971) 18 Cal.App.3d 994, 999, 96 Cal.Rptr. 223.) When a seller takes a purchase money trust deed on the property, section 580b is applicable and the seller may look only to the security. (Brown v. Jensen, supra, 41 Cal.2d at p. 197, 259 P.2d 425 [holder of purchase money second trust deed where security lost by foreclosure of first trust deed, could not recover on note and could look only to the security].) The Supreme Court has held: "That is the clear import of the wording of section 580b. The one taking such a trust deed knows the value of his security and assumes the risk that it may become inadequate." (Ibid.) The Supreme Court further held: "[T]he purpose of section 580b is that `... for a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt.' [Citation.]" (Id. at p. 198, 259 P.2d 425.) In short, the purchase money lender's only recourse is to the security. (Id. at pp. 197-199, 259 P.2d 425; American Sav. & Loan Assoc. v. Leeds, supra, 68 Cal.2d at p. 614, fn. 2, 68 Cal.Rptr. 453, 440 P.2d 933; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97; Mortgage Guarantee Co. v. Sampsell, supra, 51 Cal.App.2d at p. 185, 124 P.2d 353.)
To allow the equitable set-off under the circumstances of this case would contravene the policies underlying section 580b. As discussed above, the Legislature intended to relieve debtors under a purchase money trust deed from any personal liability on the debt. (Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97; Long v. Superior Court (1985) 170 Cal. App.3d 499, 504, 216 Cal.Rptr. 337.) To that end, the debtor's only recourse is to the security. (American Sav. & Loan Assoc. v. Leeds, supra, 68 Cal.2d at p. 614, fn. 2, 68 Cal.Rptr. 453, 440 P.2d 933; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97; Brown v. Jensen, supra, 41 Cal.2d at p. 197, 259 P.2d 425; Mortgage Guarantee Co. v. Sampsell, supra, 51 Cal.App.2d at p. 185, 124 P.2d 353.) The extent of the intended protection is reflected in the fact that no deficiency judgment will lie upon foreclosure of a purchase money trust deed whether it is conducted judicially or nonjudicially. (§ 580b.) To allow the judgment against defendants and in favor of plaintiffs to be set off against the deficiency remaining following the nonjudicial foreclosure sale under the purchase money trust deed would improperly: shift the risk of inadequate security from defendants, where it belongs under section 580b, to plaintiffs (Ghirardo v. Antonioli supra, 14 Cal.4th at p. 52, 57 Cal.Rptr.2d 687, 924 P.2d 996; Cornelison v. Kornbluth, supra, 15 Cal.3d at pp. 601-602, 125 Cal.Rptr. 557, 542 P.2d 981; American Sav. & Loan Assoc. v. Leeds, supra, 68 Cal.2d at p. 615, 68 Cal.Rptr. 453, 440 P.2d 933; Bargioni v. Hill, supra, 59 Cal.2d at p. 123, 28 Cal.Rptr. 321, 378 P.2d 593; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97; Brown v. Jensen, supra, 41 Cal.2d at pp. 197-198, 259 P.2d 425); allow defendants to *302 recover more than the fair market value of the property at the time of foreclosure (Ghirardo v. Antonioli, supra, 14 Cal.4th at p. 53, 57 Cal.Rptr.2d 687, 924 P.2d 996; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97; see 4 Miller & Starr, supra, Deeds of Trust and Mortgages, § 9:66, p. 195); cause plaintiffs to lose the property yet still be liable for the purchase price (ibid.); and allow defendants to look beyond the security for recovery of the debt. (American Sav. & Loan Assoc. v. Leeds, supra, 68 Cal.2d at p. 614, fn. 2, 68 Cal.Rptr. 453, 440 P.2d 933; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97; Brown v. Jensen, supra, 41 Cal.2d at p. 197, 259 P.2d 425; Mortgage Guarantee Co. v. Sampsell, supra, 51 Cal.App.2d at p. 185, 124 P.2d 353; see generally, 4 Miller & Starr, supra, Deeds of Trust and Mortgages, §§ 9:65, 9:66, pp. 193-194.) Therefore, the equitable set-off was improper under section 580b.[3]

D. No Basis for Recovery Independent of the Deficiency Exists in this Case
This case is distinguishable from those in which creditors have been allowed additional recovery against a debtor following foreclosure because the actions did not conflict with the policy behind the antideficiency laws.

1. Additional security
The courts have repeatedly held that resort to additional security following a nonjudicial foreclosure is not an attempt to secure a deficiency judgment. (Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 251-252, 62 Cal.Rptr.2d 243, 933 P.2d 507 [letters of credit]; Freedland v. Greco (1955) 45 Cal.2d 462, 465-166, 289 P.2d 463 [chattel mortgage]; Hatch v. Security-First Nat. Bank, supra, 19 Cal.2d at pp. 260-262, 120 P.2d 869 [pledge of personal property owned by estate and trust deeds on real property owned by individual family members]; MDFC Loan Corp. v. Greenbrier Plaza Partners (1994) 21 Cal.App.4th 1045, 1053-1054, 26 Cal.Rptr.2d 596 [assignment of rents]; Mortgage Guarantee Co. v. Sampsell, supra, 51 Cal.App.2d at pp. 182-186, 124 P.2d 353 [same]; see 3 Witkin, Summary of Cal. Law, supra, Security Transactions in Real Property, § 162, p. 661; Cal. Prac. Guide, Real Property Transactions, Ch. 6-1, Real Property Foreclosures and Antideficiency Laws, § 6:552.10.) The Supreme Court has held: "[The antideficiency statutes do] not limit the security for notes given for the purchase of real property only to trust deeds; other security may be given as well. [Citation.] Creditors may resort to such other security in addition to nonjudicial foreclosure of the real property security." (Western Security Bank v. Superior Court, supra, 15 Cal.4th at p. 252, 62 Cal.Rptr.2d 243, 933 P.2d 507; Freedland v. Greco, supra, 45 Cal.2d at p. 466, 289 P.2d 463.) The additional security is an obligation owed independently. (Western Security Bank v. Superior Court, supra, 15 Cal.4th at p. 252, 62 Cal. Rptr.2d 243, 933 P.2d 507.) The Supreme Court has further held: "A creditor that draws on [additional security] does no more than call on all the security pledged for the debt. When it does so, it does not violate the prohibition of deficiency judgments." (Ibid.)
This case did not involve any additional security. The judgment for attorney's fees and costs in plaintiffs' favor was not given as additional security for the purchase money loan from defendants. Nor is this case in any way analogous, as defendants suggest, to those in which additional security was given.

2. Unjust enrichment
Section 580b also does not bar a creditor's recovery on an unjust enrichment theory. (Ghirardo v. Antonioli supra, 14 Cal.4th at pp. 43-44, 57 Cal.Rptr.2d 687, 924 P.2d 996; First Nationwide Savings v. Perry, supra, 11 Cal.App.4th at pp. 1664-1665, 15 Cal.Rptr.2d 173; see 3 Witkin, Summary of Cal. Law, supra, Security Transactions in Real Property, § 162, p. 661.) In Ghirardo v. Antonioli supra, 14 Cal.4th at page 43, 57 Cal.Rptr.2d 687, 924 P.2d 996, the purchasers of property subject to a purchase money *303 deed of trust asked the seller to make a payoff demand for the amount due on the promissory note. The seller complied, the purchasers paid the sum stated, and the deed of trust was reconveyed to the buyers. The seller then discovered the payoff demand had understated the amount due under the note. The seller sued to recover the sums mistakenly omitted from the payoff demand. The Ghirardo court held the seller could not obtain a deficiency judgment against the purchasers, but section 580b did not bar the seller's recovery on an unjust enrichment theory. (Id. at pp. 49-50, 57 Cal.Rptr.2d 687, 924 P.2d 996.) The court held, "Neither the wording nor the underlying purpose of ... section 580b" dictated an absolute bar to recovery "in the case of a mistake of fact in a payoff demand." (Id. at p. 52, 57 Cal.Rptr.2d 687, 924 P.2d 996.) The court reasoned: "None of the[] economic policy considerations [underlying section 580b] applies to a mortgagee's recovery of sums omitted, through a mistake of fact, in a payoff demand statement." (Id. at p. 53, 57 Cal.Rptr.2d 687, 924 P.2d 996.) The court explained: "`[Allowing recovery for unjust enrichment would not contradict the policy of requiring the creditor to rely upon the property to secure the debt. This is because any unjust enrichment recovery could not exceed the property value. Thus, if the property value had decreased, and was less than the debt, a plaintiffs unjust enrichment recovery would be limited by the value of the property.' [Citation.] [¶] Nor would this result permit a creditor to obtain a deficiency judgment through trickery, e.g., by releasing its security after accepting payment on an understated payoff demand and then suing for unjust enrichment. `A beneficiary would not gain anything in [such a] scenario.... [A]n unjust enrichment recovery is not the same as a deficiency judgment. Whether through foreclosure or an unjust enrichment cause of action, the beneficiary's recovery would be limited to the amount of the debt covered by the value of the property.... No deficiency would be allowed.' [Citation.]" (Ibid., quoting First Nationwide Savings v. Perry, supra, 11 Cal.App.4th at pp. 1664-1665, 15 Cal.Rptr.2d 173, fn. omitted.)
In Ghirardo, as contrasted with the present case, the deed of trust was reconveyed to the purchasers. Therefore, they retained the property, and were required only to pay the value of that parcel. In other words, they were unjustly enriched only to the extent that the property value exceeded the payoff amount. Here, plaintiffs lost the property through foreclosure. Further, defendants' $2 million credit bid by which they recovered the parcel at the foreclosure sale equaled the fair market value of the property at that time. Therefore, defendants seek both to retain the property and to recover more than its value. Defendants also seek to divest plaintiffs of attorney's fees and costs awarded to them in an action in which plaintiffs prevailed against defendants. Plaintiffs will not be unjustly enriched by recovering that award from defendants. Unlike recovery on an unjust enrichment theory as in Ghirardo, to allow defendants a set-off in the amount of plaintiffs' judgment against them would result in a recovery in excess of the property value at the time of foreclosure. Such recovery is barred under section 580b. (Ghirardo v. Antonioli supra, 14 Cal.4th at p. 53, 57 Cal.Rptr.2d 687, 924 P.2d 996; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97.)

3. Independent tort action
Actions against a debtor for fraud in the inducement of the loan also are not barred by the antideficiency statutes. (Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1237-1238, 44 Cal.Rptr.2d 352, 900 P.2d 601.) This is because an action for fraud in the inducement is not an attempt to recover on the debt or the note, and would not result in a double recovery for the creditor. The fraud action "`stands separate and apart from any action which the antideficiency legislation seeks to preclude.' [Citations.]" (Ibid.) Similarly, the Supreme Court has held an action for bad faith waste brought against the debtor does not violate antideficiency laws because recovery would not be measured by the extent the proceeds of the foreclosure sale were insufficient to satisfy the indebtedness, and recovery would be entirely independent of the concerns encompassed by the antideficiency legislation. *304 (Cornelison v. Kornbluth, supra, 15 Cal.3d at p. 605, 125 Cal.Rptr. 557, 542 P.2d 981.)
Defendants' claim is not based on a cause of action separate and apart from any attempt to recover on the note or the debt. Defendants are not attempting to recover based on a wrong, such as fraud, committed by plaintiffs. Rather, they are attempting to recover over and above the value of the property against the remaining unsecured debt evidenced by plaintiffs' promissory note.

E. The Courts Have Limited the Right of Setoff in Certain Other Circumstances in Order to Protect Debtors' Rights
We note, and the Supreme Court has observed, that "under the law of California..., the courts in certain circumstances have limited the right of setoff in order to protect the rights of the debtors." (Kruger v. Wells Fargo Bank (1974) 11 Cal.3d 352, 368-369 & fn. 24, 113 Cal.Rptr. 449, 521 P.2d 441.) In Beckman v. Manlove (1861) 18 Cal. 388, 389, for example, the Supreme Court held a setoff could not be used to retain possession of property exempt from execution. The court observed, "A different doctrine would operate a practical repeal of the exemption laws." (Ibid.) The Supreme Court in Kruger v. Wells Fargo Bank, supra, 11 Cal.3d at page 368, footnote 24, 113 Cal.Rptr. 449, 521 P.2d 441, cited other examples as follows: "Many other California cases have limited the right of setoff in order to carry out state policies protecting the interest of the debtor. McKean v. German-American Savings Bank (1897) 118 Cal. 334 [50 P. 656], held that the one-action rule of [section] 726 bars a mortgagee's assertion of a secured debt to setoff an unsecured debt. In Roberts v. Spires (1925) 195 Cal. 267 [232 P. 708], when the owner of a building under construction attempted to set off against the contract price her claim for damages owing by the general contractor, the court rejected the setoff, stating that `The unpaid balance of the contract price constitutes a fund which is set apart for the satisfaction of lien claimants.' (195 Cal. at pp. 270-271 [232 P. 708].) In Keck v. Keck (1933) 219 Cal. 316 [26 P.2d 300], the court held that a husband could not set off his wife's debt to him against an award of alimony because `alimony ... cannot be garnished or appropriated to payment of the wife's debts contracted prior to the decree granting the alimony, either where her creditor is a third party or her divorced husband.' (219 Cal. at p. 320 [26 P.2d 300].) Avila v. Leonardo (1942) 53 Cal.App.2d 602 [128 P.2d 43] held that child support payments are not subject to setoff. Williams v. Williams (1970) 8 Cal.App.3d 636 [87 Cal. Rptr. 754], reiterated that both alimony and child support payments are immune. Setoff cannot be asserted to defeat the state's claim for taxes (Berryessa Cattle Co. v. Sunset Pacific Oil Co. (9th Cir.1937) 87 F.2d 972, 974), nor an injured employee's claim for workmen's compensation benefits (see, e.g., Under v. McBride (1920) 7 LAC. 144). Four years ago, in Crooks v. State Bar (1970) 3 Cal.3d 346, 358 [90 Cal.Rptr. 600, 475 P.2d 872], we ruled that an attorney cannot setoff fees due him against trust funds owed to his client." Other cases to the same effect include: Garg v. People ex rel. State Bd. of Equalization (1997) 53 Cal.App.4th 199, 215, 61 Cal.Rptr.2d 376 [allowing State Board of Equalization to offset an attorney fee award to the taxpayer under Revenue and Taxation Code section 7156, part of the Harris-Katz California Taxpayers' Bill of Rights, against a tax liability would frustrate the important public policies of citizen protection underlying the taxpayer protection legislation]; Bonelli v. State of California (1977) 71 Cal. App.3d 459, 468, 139 Cal.Rptr. 486 [pension benefits owed to a widow could not be offset against sums claimed to be owed to the state on account of bribes deceased had accepted while a member of the State Board of Equalization].
We think the same considerations apply to the present case. To allow the defendant-creditors to offset a debt owed by them to the plaintiff-debtors against a deficiency remaining after nonjudicial foreclosure under a purchase money trust deed would operate in a practical manner to abrogate section 580b. In other words, section 580b protects debtors whose purchase money debt is secured by a trust deed on real property from personal liability for any difference between the value of the parcel at the time of foreclosure and the indebtedness. *305 The protection is predicated on important public policy concerns. (Cornelison v. Kornbluth, supra, 15 Cal.3d at pp. 601-602, 125 Cal.Rptr. 557, 542 P.2d 981; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97.) We conclude the equitable right of setoff should be limited to protect debtors from liability such as that proposed here.

F. While the Foreclosure did not Extinguish the Debt, no Mutual Obligations Existed Such as Would Allow an Offset
Defendants correctly assert the nonjudicial foreclosure, at which they reacquired the property for less than the full amount of the outstanding indebtedness, did not extinguish the debt. (Cornelison v. Kornbluth, supra, 15 Cal.3d at pp. 607-608, 125 Cal.Rptr. 557, 542 P.2d 981; Romo v. Stewart Title of California (1995) 35 Cal. App.4th 1609, 1615, fn. 5, 42 Cal.Rptr.2d 414; Passanisi v. Merit-McBride Realtors Inc., supra, 190 Cal.App.3d at p. 1504, 236 Cal. Rptr. 59; Mortgage Guarantee Co. v. Sampsell, supra, 51 Cal.App.2d at p. 186, 124 P.2d 353.) Further, under Code of Civil Procedure section 428.10 (formerly section 438), the right to maintain a counterclaim is not affected by the fact that either party's claim is secured by a mortgage or deed of trust. (Former § 438, as amended by Stats. 1927, ch. 813, § 1, p. 1620; Law Rev. Com. com., 1971 Repeals, 14A West's Ann. Cal.Code Civ. Proc. (1973) §§ 437d to 444, p. 506.)[4] For example, the Supreme Court has held a debtor can set-off an existing claim against the creditor in response to a nonjudicial foreclosure proceeding. (Hauger v. Gates (1954) 42 Cal.2d 752, 755-756, 269 P.2d 609.) When the debtor asserts the right to a set-off, the antideficiency statutes are not implicated. (Aplanalp v. Forte, supra, 225 Cal.App.3d at p. 617, 275 Cal.Rptr. 144.) However, the present case does not involve an effort by the debtor to set off a debt.
In order to assert a set-off, cross-demands for money must exist between the parties. (§ 431.70; Granberry v. Islay Investments (1995) 9 Cal.4th 738, 743-744, 38 Cal.Rptr.2d 650, 889 P.2d 970; Harrison v. Adams (1942) 20 Cal.2d 646, 648-649, 128 P.2d 9.)[5] The right of setoff arises when two parties are mutually debtor and creditor to each other. (Ibid.) The Supreme Court has held: "[The right to a set-off is] founded on the equitable principle that `either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference, ...' [Citation.]" (Granberry v. Islay Investments, supra, 9 Cal.4th at p. 744, 38 Cal.Rptr.2d 650, 889 P.2d 970.) The Supreme Court has also held: "[I]t is well settled that a court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered." (Harrison v. Adams, supra, 20 Cal.2d at pp. 648-649, 128 P.2d 9; § 431.70.) As the Supreme Court explained in Jess v. Herrmann (1979) 26 Cal.3d 131, 137, 161 Cal.Rptr. 87, 604 P.2d 208, in the ordinary setoff circumstances, "a setoff procedure simply eliminates a superfluous exchange *306 of money between the parties," and "may operate to preclude an unfair distribution of loss if one of the parties is totally insolvent or is unable to pay a portion of the judgment against him."
We have not found any case in which a creditor was allowed to foreclose upon security and then offset a judgment owed by it to the debtor against the remaining indebtedness except where a deficiency judgment was lawfully entered. In Bagdasarian v. Gragnon (1948) 31 Cal.2d 744, 763, 192 P.2d 935, a creditor judicially foreclosed a chattel mortgage and recovered a deficiency judgment. The creditor was permitted an offset against the deficiency judgment for fraud damages awarded in favor of the debtor. In Coonan v. Loewenthal, supra, 147 Cal. at pages 219-220, 81 P. 527, a surety foreclosed upon several mortgages given as security against loss by reason of his suretyship and recovered a deficiency judgment. The surety was allowed to set-off against the deficiency judgment a judgment in favor of his debtor for services rendered as an attorney. (Id. at p. 227, 81 P. 527.) The Supreme Court noted: "At the time the motion to set off was made, and when it was granted, the mortgage security having been exhausted, the amount of set-off which [the surety] was entitled to claim against the [debtor's] judgment had been determined by the deficiency judgment in his favor, and the only question before the [trial] court then was the right to set off judgment against judgment. [¶] ... [I]n the case at bar, there was no attempt to set off a judgment against the mortgage indebtedness, but to set off a deficiency judgment after the mortgage had been foreclosed and the deficiency ascertained and docketed at the time the motion to set off was made." (Id. at p. 226, 81 P. 527.)
The converse of the present situation was at issue in Passanisi v. Merit-McBride Realtors Inc., supra, 190 Cal.App.3d at pages 1504-1512, 236 Cal.Rptr. 59. In that case, a home equity loan was secured by a second trust deed. The creditor initiated nonjudicial foreclosure proceedings. The debtors sought unsuccessfully to enjoin the foreclosure sale. The creditor was awarded its costs and attorney's fees incurred in defending the debtors' action for injunctive relief. The creditor foreclosed. The foreclosure sale resulted in a surplus of funds. In other words, the creditor's bid exceeded the debt. The court held the debtors were entitled to the surplus. (Id. at p. 1504, 236 Cal.Rptr. 59.) Further, the debtors were entitled to offset the surplus from the proceeds of the foreclosure sale against the judgment for attorney's fees and costs. (Id. at p. 1512, 236 Cal.Rptr. 59.) The Court of Appeal stated: "Our conclusion is that the record establishes that the proceeds from the trustee's sale were sufficient to satisfy the outstanding secured obligation and to contribute to some extent to the satisfaction of the outstanding judgment. Under the rule of offset, either party to a transaction involving mutual debts can strike a balance, holding himself owing or entitled to only the net difference. [Citations.] Plaintiffs are entitled to offset the surplus from the proceeds of the trustee's sale against the judgment for attorney's fees and costs and to regard the judgment as satisfied to the extent of the surplus." (Ibid.) In Passanisi unlike the present case, there were mutual debts. The creditor owed the debtors the surplus from the foreclosure sale. The debtors were liable to the creditor on the judgment for attorney's fees and costs.
In the present case, no mutual obligations existed between the parties. Having foreclosed on a purchase money trust deed, defendants did not obtain and had no right to secure a deficiency judgment. (§ 580b; Ghirardo v. Antonioli supra, 14 Cal.4th at p. 49, 57 Cal.Rptr.2d 687, 924 P.2d 996.) Following foreclosure, defendants were left with an unsecured, unenforceable claim for the balance due on the promissory note. They had no recourse beyond the security. (§ 580b; American Sav. & Loan Assoc. v. Leeds, supra, 68 Cal.2d at p. 614, fn. 2, 68 Cal.Rptr. 453, 440 P.2d 933; Roseleaf Corp. v. Chierighino, supra, 59 Cal.2d at p. 42, 27 Cal.Rptr. 873, 378 P.2d 97; Brown v. Jensen, supra, 41 Cal.2d at pp. 197-199, 259 P.2d 425; Mortgage Guarantee Co. v. Sampsell, supra, 51 Cal.App.2d at p. 185, 124 P.2d 353.) Simply put, following the foreclosure, defendants remained indebted to plaintiffs on the judgment for attorney's fees and costs; however, plaintiffs had no legally enforceable obligation *307 to defendants. Defendants had no right to recover against plaintiffs for any deficiency remaining after the foreclosure sale. Absent mutual obligations, there was no basis for ordering a set-off. (§ 431.70; Granberry v. Islay Investments, supra, 9 Cal.4th at p. 744, 38 Cal.Rptr.2d 650, 889 P.2d 970; Harrison v. Adams, supra, 20 Cal.2d at pp. 648-649, 128 P.2d 9.)
We do not mean to suggest that a claim always must be reduced to a judgment before it will be allowed as a setoff. The law recognizes that "[t]he fact that [a] demand.... has not been reduced to judgment is no obstacle to its allowance as a set-off against a judgment." (Harrison v. Adams, supra, 20 Cal.2d at p. 649, 128 P.2d 9; Machado v. Borges (1915) 170 Cal. 501, 502, 150 P. 351.) Rather, the point is that defendants owed plaintiffs an enforceable debt of over $300,000. At the same time, plaintiffs did not owe defendants an enforceable debt. Plaintiffs' so-called $2 million debt is simply an unenforceable deficient, y. If the $2 million debt were enforceable against plaintiffs, defendants would be in possession of a deficiency judgment. The absence of a deficiency judgment against plaintiffs under the circumstances of this case simply reflects the fact that defendants, by law, cannot recover such from plaintiffs.
Defendants point out "by analogy" that section 431.70 expressly permits a debt otherwise barred by the statute of limitations to be used as a setoff. They contend: "There is nothing in the nature of the debt owed by [plaintiffs] which compels a different treatment." However, section 431.70 expressly applies only to cross-demands for money where the statute of limitations has run on a demand or the time limit on enforceability has expired. (§ 431.70; 14A West's Ann. Code Civ. Proc., Legis. Com. com. (1971 Addition) § 431.70, p. 413, and Law Rev. Com. com. (1982 Amendment) 1998 Cum. Pocket Part, § 431.70, p. 75.) Neither issue, a statute of limitations or enforceability limits, is involved here. Therefore, section 431.70 has no bearing on this case. Further, the debts addressed in section 431.70 would be enforceable but for the fact the statute of limitations or time limit on enforceability had run. Here, the remaining indebtedness is unenforceable under section 580b regardless of any time limits.

G. Sanctions[**]

IV. DISPOSITION
The order granting an equitable set-off is reversed. All parties are to bear their own costs on appeal apart from sums imposed as sanctions. Sanctions are imposed, jointly and severally, against plaintiffs Ben Zion Birman, Israel Birman, and Switch Construction Co., Inc., and their attorney, Matthew H. Tambor payable to defendants in the sum of $2,500. Sanctions are imposed against plaintiffs, Ben Zion Birman, Israel Birman and Switch Construction Co. and their counsel Matthew H. Tambor in the amount of $750, payable to the State of California, are to be paid within 10 days of the date on which this opinion becomes final.
GRIGNON and ARMSTRONG, JJ., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the indicated portion, part III.G.
[1] All farther statutory references are to the Code of Civil Procedure except where otherwise noted.
[2] The "security first" aspect of section 726 is not at issue here. (E.g. Security Pacific National Bank v. Wozab (1990) 51 Cal.3d 991, 997, 275 Cal.Rptr. 201, 800 P.2d 557; Walker v. Community Bank (1974) 10 Cal.3d 729, 736, 111 Cal. Rptr. 897, 518 P.2d 329.) Defendants foreclosed on the real property security before they sought an equitable set-off.
[3] Plaintiffs contend the equitable set-off also contravened section 580d. That statute precludes any deficiency judgment following a nonjudicial foreclosure. Because we conclude the set-off was improper under section 580b, we need not consider the application of section 580d.
[4] A court has the power, independent of any statute, to set off one judgment against another. (Haskins v. Jordan (1898) 123 Cal. 157, 160, 55 P. 786.) That power rests upon the court's general jurisdiction. (Ibid.) Further, a court may proceed on a motion to set off judgments. (Coonan v. Loewenthal (1905) 147 Cal. 218, 221, 81 P. 527.)
[5] Section 431.70 provides: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated for so far as they equal each other,..." The Supreme Court has repeatedly held that section 431.70 "does not create a substantive right to raise setoff as a defense to a claim for monetary relief, but merely describes the procedures to be followed in raising this defense." (Granberry v. Islay Investments, supra, 9 Cal.4th at p. 744, 38 Cal.Rptr.2d 650, 889 P.2d 970, citing Kruger v. Wells Fargo Bank, supra, 11 Cal.3d at p. 362, 113 Cal.Rptr. 449, 521 P.2d 441, and Hauger v. Gates, supra, 42 Cal.2d at p. 755, 269 P.2d 609.) Former section 440, now section 431.70, partially codified the common law equitable principle of setoff (Kruger v. Wells Fargo Bank, supra, 11 Cal.3d at p. 360, 113 Cal.Rptr. 449, 521 P.2d 441) and "established] a procedure for asserting such a setoff under the code pleading system of California." (Id. at p. 362, 113 Cal.Rptr. 449, 521 P.2d 441.)
[**] See footnote *, ante.