Filed 3/21/16  Suojanen v. Strong CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| WAYNE WILLIAM SUOJANEN,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>         v.<br><br>KATHLEEN STRONG,<br><br>    Defendant, Cross-complainant and Respondent. | G050563<br><br>(Super. Ct. No. 30-2010-00427473)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Law Office of Michael G. York and Michael G. York for Plaintiff, Cross-defendant and Appellant.

Strong Law Firm and Kathleen Strong, in pro. per., for Defendant, Cross-complainant and Respondent.

\*          \*          \*

This appeal is just the latest of a series of appeals arising out of these parties' shared commitment to litigating against each other. While significant disputes have been aired in some of the prior appeals, this one is a fight about $994 – a fight to which both sides have dedicated time and resources worth far in excess of that amount. And it is now a fight which has diverted this court from addressing the real and significant disputes of other litigants. Indeed, at the trial court level, appellant Wayne William Suojanen openly suggested respondent Kathleen Strong was wasting court resources by even seeking the relief from which he now appeals. He apparently views that issue differently when he is on the losing side of that $994.

Suojanen is appealing an order that allowed Strong to offset the remaining $994 of a sanction award she has refused to pay him voluntarily, against a judgment (assigned to her by a third party) which he has refused to pay voluntarily for years. Suojanen claims the moral high ground on the basis that Strong's failure to pay sanctions is somehow more reprehensible than his failure to pay a judgment. We have no occasion to assess the parties' relative reprehensibility, but if we did, we would not hesitate to suggest everyone should spend some significant time washing their hands.

Suojanen also asserts the trial court erred in allowing Strong to set off her sanctions liability against his judgment liability because (1) allowing a party to avoid paying sanctions through offset violates public policy, and (2) Strong did not become the owner of the third party judgment she seeks to set off against her sanctions liability until *after* Suojanen had already assigned his right to those sanctions to Suojanen's attorney, York – thus, the cross-liabilities never coexisted for offset purposes. Suojanen's arguments fail.

First, allowing a party to offset a liability does not relieve the party from the obligation of satisfying that liability. It merely operates as an alternative means of doing so. There is no special rule that limits the manner in which sanctions liabilities can be satisfied. And second, if the bare *assignment* of the third party judgment to Strong in

2

October 2013 was not sufficient to convey her *ownership* of that judgment against Suojanen for offset purposes, then Suojanen's bare *assignment* of his sanction award against Strong to York, in January 2014, was likewise insufficient to divest Suojanen of *ownership* of that sanction award for offset purposes. Thus, either Strong became the owner of the judgment against Suojanen for offset purposes in October 2013, when it was initially assigned to her, or Suojanen *still owned* the sanction award against Strong in January 2014, when the third party judgment was formally assigned to Strong by notice filed under the case number of that judgment. Significantly, there is no evidence Suojanen *ever* obtained any formal court order transferring Strong's sanctions liability from himself to York.

The order is affirmed.


FACTS


This dispute, like several others, arises out of an underlying lawsuit, *Jneid v. TriPole Corporation* (Dec. 17, 2009, G039500) opn.mod. Jan. 15, 2010 (nonpub. opn.), in which Suojanen and Strong acted as cocounsel for a period of time. The plaintiffs in that case (who by that time were still represented by Suojanen, but not Strong) were awarded $700,000 in attorney fees as a sanction in the case. Thereafter, several parties, including Strong, asserted claims to share in that sanction award, and Suojanen filed a declaratory relief action seeking a determination the fees belonged to him alone.

The ensuing litigation, including several cross-complaints, has been hardfought, resulting in a trial court register of actions that spans 360 pages. That litigation has spawned several appeals, and even related litigation directly between Strong and Suojanen's attorney, York. (*York v. Strong*, Super. Ct. Orange Co. No. 30-2013-

3

00660117.)  That related litigation has, in turn, spawned two appeals.  (*York v. Strong* (Mar. 10, 2015, G049778 [nonpub.opn.] and G050681.)

In February 2013, the trial court imposed discovery sanctions against Strong, and in favor of Suojanen, in the amount of $1,500.  Strong did not immediately pay that sanction amount, and Suojanen obtained a writ of execution that allowed him to collect $636 of the total.

In October 2013, Strong purchased a judgment that was entered against Suojanen, and in favor of Lexis-Nexis Group, in 2007 (the Lexis judgment).  She claims she did so because after Suojanen prevailed on her claims against him at trial, York threatened to go after her for an award of attorney fees, and she wished to use the Lexis judgment as an offset against any such award.  Strong filed notice of that judgment with the trial court in October 2013, identifying herself as the "[a]ssignee of Lexis-Nexis."

In January 2014, Strong filed a formal notice reflecting the assignment of the Lexis judgment to her, under the case number of the Lexis judgment.  She thereafter solicited Suojanen's agreement to set off her Lexis judgment against his sanction award.  He refused.  Finally, in March 2014, she filed a motion seeking a court declaration that her remaining sanctions liability (valued at $994 including interest) could be set off against the Lexis judgment Suojanen owed to her.  She argued that a set off was particularly appropriate because Suojanen was claiming to be insolvent, and it would be unfair to allow him to enforce her liability to him while remaining immune to any enforcement of his liability to her.

Suojanen opposed the set off, and in doing so chided Strong for requiring that "court resources" be "expended" "in an effort to avoid paying . . . $1,000."  On the merits, he argued that (1) allowing a party to set off court sanctions would violate public policy, (2) his attorney, York, had a pre-existing lien against the sanction award, created by his retainer agreement, and (3) he had formally assigned his right to the sanctions to

4

York, before Strong obtained her formal assignment of the Lexis judgment with the court, thus the two liabilities never coexisted for purposes of a set off.

In her reply, Strong offered the court evidence that although she "did not formally file a notice of assignment of [the Lexis judgment] with the court until January of 2014, [she] had obtained the assignment in late October 2013, and [she] gave notice to York and Suojanen promptly thereafter."

The trial court ruled in favor of Strong, declaring that the remaining $994 of Suojanen's sanction award was offset by the Lexis judgment.

Shortly after the court issued its order, Suojanen moved for reconsideration. He argued the court should reconsider its ruling because he had new evidence demonstrating the October 2013 notice of lien relied upon by Strong was "invalid" because she did not become the "assignee of record" of the Lexis judgment until January 2014. As support for that motion, Suojanen offered the court evidence that Strong and Lexis-Nexis Group confirmed their agreement to assign her the Lexis judgment on October 11, 2013, and she sent a check as payment that same day. Lexis-Nexis Group cashed her check on October 25, 2013. Suojanen asserted this evidence established only that Strong and Lexis-Nexis Group had "an *agreement* that Lexis-Nexis . . . *would assign* the judgment to Ms. Strong" (second italics added), but did not establish the judgment was actually assigned as of that time.

On June 6, 2014, a week after filing his motion for reconsideration of the set off order, Suojanen filed an acknowledgment of the full satisfaction of his sanction award against Strong.

On July 17, 2014, the court denied the motion for reconsideration.

After Suojanen filed his opening brief on appeal, Strong filed a motion to strike it, arguing that the suspension of York's professional corporation somehow prevented him from submitting a brief under the name "Law Office of Michael G. York." The argument was farfetched, but no assertion can go unanswered between these parties

5

in their pitched battle for $994, so Suojanen expended further resources filing a formal opposition to that motion. We denied it.

DISCUSSION

*1. Standard of Review*

"The right of offset rests upon the inherent power of the court to do justice to parties appearing before it." (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 753.) "A trial court's decision to apply a credit in partial satisfaction of the judgment is an exercise of the court's equitable discretion. [Citation.] An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason." (*Id.* at p. 749.)

"Under the [abuse of discretion] standard of review, a reviewing court should not disturb the trial court's exercise of discretion unless it has resulted in a miscarriage of justice." (*City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036.) "'[O]ne of the essential attributes of abuse of discretion is that it must clearly appear to effect injustice. [Citations.] Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

*2. Public Policy*

Suojanen's first argument is that an order allowing a party to offset a sanction award is "contrary to public policy and inequitable." Specifically, he argues that

6

allowing a party to set off a sanctions liability would relieve the party of the obligation to pay the sanction and thus eliminate the incentive not to engage in abusive legal tactics. We are unpersuaded. If that were a pertinent concern, it would apply equally to parties, such as Suojanen, who breach their contracts with entities like Lexis-Nexis and thereafter avoid paying the damages they were found to have caused by doing so. Allowing such a party to block efforts to even use the judgment as an offset would similarly eliminate the incentive to adhere to contractual obligations.

In any event, an offset is not a free pass to avoid a liability. A person receiving relief from a judgment through an offset must also *give relief* from an opposing judgment *in the same amount*. A determination of offset reflects an exchange of liabilities, not a gift, and Strong gave up an equivalent amount of her Lexis judgment against Suojanen to obtain the relief she sought.

In this case, however, Suojanen also implicitly disparages the value of Strong's Lexis judgment against him, apparently because he believes he can never be forced to pay it. However, as Strong points out, that argument hurts Suojanen rather than helps him because a key reason to allow an offset is to "protect[] each party from the risk that the other may collect the debt owed to him or her, then default upon his or her own obligation." (*Garg v. People ex rel. State Bd. of Equalization* (1997) 53 Cal.App.4th 199, 212, abrogated on another point in *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 322-323.) That seems to be Suojanen's plan. So even if Suojanen may not otherwise pay any portion of the Lexis judgment, the trial court did not abuse its discretion by allowing Strong to – in effect – intercept her own sanctions payment and apply it in partial satisfaction of that judgment.

*3. Alleged Invalidity of Strong's Notice of Lien*

In the trial court, Suojanen argued setoff was improper for two reasons: First, because he had previously granted a lien over the sanction award to York as part of

7

York's retainer agreement; and second, because he also formally assigned the sanction award to York, before Strong obtained her formal assignment of the Lexis judgment, and thus the two judgments had never coexisted between the same parties.

On appeal, he has essentially abandoned the first argument, and for good reason. The contractual provision he relies upon from York's retainer agreement purports to grant York "a lien on any and all funds *received* in connection with any of the matters that are the subject of Attorney's representation under this Contract." (Italics added.) And of course, the *unpaid* portion of Strong's sanctions was never received. Consequently, this lien could not have attached to those funds.

Suojanen's second argument has been somewhat retooled. At the trial court level, he argued that Strong was not the assignee of the Lexis judgment until mid-January 2014, by which time he had already "formally assigned" his sanction award to York. He supported the latter claim with evidence of a one sentence document, dated January 2, 2014 and signed only by him, which states: "I, BILL SUOJANEN, hereby formally assign[] to the Law Office of Michael G. York all costs and attorney's fees awarded or that may be [] awarded in any legal proceeding in which the Law Office of Michael G. York has or is representing me." Based on that evidence of his assignment of the sanction award to York – before Strong was assigned the Lexis judgment against him – Suojanen claimed those two liabilities never coexisted between the same parties, and thus were not eligible to be offset against each other. (See *Birman v. Loeb* (1998) 64 Cal.App.4th 502, 518 ["In order to assert a set off, cross-demands for money must exist between the parties"]; Code Civ. Proc., § 431.70.)

Now Suojanen acknowledges Strong "arguably [had] an agreement that Lexis-Nexis would assign the judgment to [her]" in October 2013 (before his own claimed assignment of the sanctions to York), and also that on October 31, 2013, she filed a "Notice of Lien" in connection with the Lexis judgment (identifying herself as "Assignee of Lexis-Nexis"). However, making that notice of lien his new focus,

8

Suojanen contends it was invalid because Strong was not entitled to *enforce* her assigned judgment until she became the "assignee of record" on January 13, 2014. In the meantime, of course, he had "formally assigned" his sanction award to York. So again, his ultimate point is that he and Strong were never "mutually debtor and creditor to each other." Again we are unpersuaded.

Suojanen's challenge to the validity of Strong's October 2013 lien notice is a red herring. There is no requirement that a valid lien be filed to establish ownership of a judgment, or to obtain an offset. And by the time Strong sought her offset – i.e., attempted to enforce the Lexis judgment – it is undisputed she had filed a formal notice of assignment of the Lexis judgment with the court.

Instead, the fatal flaw in Suojanen's argument, no matter how he expresses it, is that if the October 2013 assignment of the Lexis judgment to Strong was somehow insufficient to make her the owner of that judgment for offset purposes, then his own purported assignment of his sanction award to York was *also* insufficient to divest him of ownership of that judgment for offset purposes.

Specifically, Suojanen argues Strong had only an *agreement* for the assignment of the Lexis judgment in October, but had no official ownership of the judgment against him until January, when she and Lexis-Nexis Group executed a formal, notarized, notice of assignment document and filed it with the court. But if that is true, the same would be true of Suojanen's purported assignment of his sanctions judgment to York in January 2014. At most, it was just an agreement. There is no evidence that either Suojanen or York *ever* took steps to formalize that assignment, such that York would have been entitled to enforce the sanctions judgment on his own account. In fact, it is even unclear that any enforceable assignment agreement existed between Suojanen and York. The document relied upon to establish that agreement is unilateral, and reflects no acceptance of the purported assignment by York. If York did accept (perhaps orally), there is no evidence of when that acceptance occurred.

9

In short, whatever deficiency might have existed in the assignment of the Lexis judgment to Strong in October 2013 (and we express no opinion on that issue), would have also existed in Suojanen's assignment of the sanctions judgment to York in January 2014. Consequently, either Strong owned the Lexis judgment for offset purposes in October 2013, or Suojanen *still owned* the sanctions judgment against her as of the time the court issued its order. Whichever of those alternatives is correct is of no significance to our analysis. The liabilities were mutual.

DISPOSITION

The order is affirmed. The parties are to bear their own costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.

10